UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

OMAR Q. TRIGGS,

    Petitioner,

v.

    Case No. 20-cv-781-pp

UNITED STATES OF AMERICA,

    Respondent.

**ORDER DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE UNDER 28 U.S.C. §2255, DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY AND DISMISSING CASE WITH PREJUDICE**

On May 22, 2020, the petitioner filed a motion to vacate, set aside or correct the sentence imposed in United States v. Omar Triggs, Case No. 17-cr-96 (E.D. Wis.). Dkt. No. 1. The basis for the motion is the petitioner's allegation that his counsel provided ineffective assistance. Id. at 4-5. Because the petitioner is not entitled to relief, the court denies the §2255 motion and dismisses the case.

**I.    Background**

    A.    <u>Underlying Case</u>

        1.    *Indictment, information and plea agreement*

On June 6, 2017, the grand jury returned an indictment against the petitioner and Kavanaugh C. Coleman, Joshua L. Brown, Alexander Jenkins, Mychal L. Sykes, Olajwan M. Veasy, Shadell L. Burks, Kendrick A. Davis, Marcello Mays, John L. Dismuke and Jeremy J. Crumb. Triggs, Case No. 17-cr-

1

96, Dkt. No. 1. Count One charged the petitioner, Kavanaugh C. Coleman, Joshua L. Brown, Alexander Jenkins, Mychal L. Sykes, Olajwan M. Veasy, Shadell L. Burks, Kendrick A. Davis and Marcello Mays with conspiracy to distribute heroin and cocaine in violation of 21 U.S.C. §§841(a)(1), b(1)(A), 846 and 18 U.S.C. §2. Id. at 1-2. At the arraignment and plea hearing, the government reported that if convicted, the defendants charged in Count One of the indictment—including the petitioner—faced a mandatory minimum sentence of ten years in prison, a maximum of life, a maximum $10,000,000 fine and five year to life on supervised release. Dkt. No. 5 at 1.

On December 13, 2018, the government filed an information charging the petitioner with knowingly and intentionally using a telephone to facilitate the commission of a felony in violation of 21 U.S.C. §§841(a)(1) and 843(b). Dkt. No. 242. The same day, a plea agreement signed by the petitioner (represented by Attorney Christopher Bailey) was filed. Dkt. No. 240. The agreement stated that the petitioner was pleading to the single count in the information. Id. at ¶5.

In the agreement, the petitioner acknowledged that he had read and fully understood "the nature and elements of the crimes with which he ha[d] been charged" and that his attorney had fully explained "the terms and conditions of the plea agreement." Id. at ¶4. The petitioner acknowledged, understood and agreed that he was guilty of the offense in the count in the information. Id. at ¶6. He admitted that facts attached to the plea agreement established his guilt beyond a reasonable doubt and were true and correct. Id. He stated that he

understood and agreed that the maximum penalty for the count in the information was four years of imprisonment, a $30,000 fine and one year of supervised release. Id. at ¶7. The petitioner acknowledged, understood and agreed that he had "discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney." Id. at ¶8.

The agreement also laid out the elements of the charge. Id. at ¶10. It said that the parties understood and agreed that in order to prove the petitioner knowingly and intentionally used a telephone to facilitate the commission of a felony, the government would have had to prove beyond a reasonable doubt that (1) the petitioner "used a communication facility, namely the telephone," and (2) "use of the telephone facilitated the commission of a felony drug trafficking offense" under 21 U.S.C. §841(a)(1). Id. The petitioner acknowledged and agreed "that his attorney . . . discussed the applicable sentencing guidelines provisions with him to [the petitioner's] satisfaction." Id. at ¶13. He acknowledged and understood "that the sentencing guidelines recommendations contained in this agreement [did] not create any right to be sentenced within any particular sentence range, and that the court [might] impose a reasonable sentence above or below the guideline range." Id. at ¶15. The parties acknowledged, understood and agreed that the sentencing court could "consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct [was] not the subject of the offense to which [the petitioner] [was] pleading guilty." Id. at ¶16.

The parties acknowledged and understood "that the government [would] recommend to the sentencing court that the applicable base offense level for the offense charged in the Information [was] 24." Id. at ¶17. The government agreed to recommend a two-level decrease for the petitioner's acceptance of responsibility, "but only if [the petitioner] exhibit[ed] conduct consistent with the acceptance of responsibility." Id. at ¶18. The government agreed that if the court determined at the time of sentencing that the two-level reduction applied to the petitioner, it would move for an additional one-level decrease under U.S.S.G. §3E1.1(b) for the petitioner's timely notification of his intention to plead guilty. Id. "The government agree[d] to recommend a sentence at the low-end of the applicable guideline range as determined by the court." Id. at ¶21. The parties acknowledged, understood and agreed that "[t]he sentencing court [would] make its own determinations regarding any and all issues relating to the imposition of sentence and [might] impose any sentence authorized by law up to the maximum penalties set forth" in the agreement. Id. at ¶22. The petitioner acknowledged, understood and agreed that he could not "move to withdraw the guilty plea solely as a result of the sentence imposed by the court." Id. at ¶23.

The agreement provided that if the petitioner violated any term of the agreement at any time, engaged in any further criminal activity before sentencing, or failed to appear for sentencing, the agreement would "become null and void at the discretion of the government." Id. at ¶35. If the agreement "[was] revoked or if [the petitioner's] conviction ultimately [was] overturned,

then the government retain[ed] the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of [the] agreement." Id. Finally, the petitioner acknowledged, understood and agreed that he was "plead[ing] guilty freely and voluntarily because he [was] in fact guilty," and that "no threats, promises, representations, or other inducements ha[d] been made, nor agreements reached, other than those set forth in [the] agreement, to induce [the petitioner] to plead guilty." Id. at ¶36.

2. *Change-of-plea and sentencing hearings*

On January 15, 2019, the court held a change-of-plea hearing. Dkt. No. 285. The petitioner appeared in person with Attorney Bailey. Id. The court's minutes reflect that during the hour-long hearing, the court placed the petitioner under oath, reviewed the plea agreement with him and questioned him; the court recounted that the count in the information carried a maximum prison term of four years, a maximum fine of $30,000, a maximum supervised release term of one year and a mandatory special assessment of $100. Id. The court found that the petitioner "understood his trial rights, the penalties associated with the charge, the possible civil ramifications of a conviction, and the uncertainty of his ultimate sentence." Id. "The court also found that [the petitioner] entered the plea knowingly and voluntarily, without threats or promises." Id. "The court accepted [the petitioner's] plea of guilty, and found [the petitioner] guilty of the offense charged in the information." Id.

On May 23, 2019, the court conducted the sentencing hearing. Dkt. No. 348. The petitioner again appeared in person with Attorney Bailey. Id. Attorney

5

Bailey confirmed that he and the petitioner had reviewed the presentence investigation report and letters in support of the petitioner. Id. The court explained that the sentencing guidelines in the presentence report were advisory, but that the law required the court to begin its sentencing analysis with those advisory guidelines and consider their application to the factors in 18 U.S.C. §3553. Id.

The court calculated a base offense level of 24 under U.S.S.G. §2D1.1(c)(8), a two-level reduction for acceptance of responsibility under U.S.S.G. §3E1.1(a) and a one-level reduction under U.S.S.G. §3E1.1(b) for the timeliness of that acceptance, for an adjusted offense level of 21. Id. at 1-2. The petitioner did not object to this calculation. Id. The court calculated the petitioner's criminal history category as II; again, the petitioner did not object. Id. at 2. The adjusted offense level of 21 in criminal history category II resulted in an advisory sentencing range of 41 to 51 months, but because the statutory maximum of 48 months was lower than the high end of the advisory guideline range, the court concluded that the actual sentencing range was 41 to 48 months. Id. Neither party objected to the court's calculations, and each gave sentencing recommendations: the government recommended a below-guidelines sentence of twenty-four months, while the petitioner argued for a term of probation. Id.

The court concluded that a sentence of twelve months and one day followed by one year of supervised release was sufficient but not more than necessary to address the §3553 factors. Id. The court ordered the petitioner to

6

pay a special assessment of $100 and agreed to recommend that the Bureau of Prisons place the petitioner in a facility as close as possible to the Eastern District of Wisconsin. Id.

The court entered judgment on May 29, 2019. Dkt. No. 349. The court's judgment reflected the sentence: twelve months and one day of imprisonment followed by one year of supervised release. Id. at 2-3. The petitioner did not appeal.

B.  Petitioner's Motion to Vacate, Set Aside or Correct Sentence

Just one day shy of a year later—on May 22, 2020—the petitioner filed this motion to set aside, vacate or correct his sentence in Case No. 17-cr-96. Triggs v. United States, Case No. 20-cv-781 (E.D. Wis.), Dkt. No. 1. The motion asserts two grounds for relief: (1) "[i]neffective assistance which lead to entry of an involuntary guilty plea," and (2) ineffective assistance of counsel "led to Due Process violation because the elements of the offense aren't present, yet my attorney had me plead guilty." Id. at 4-5.

On June 30, 2021, the petitioner filed a letter in his criminal case. Stating that he had "completed [his] terms of probation, and received [his] completion papers as of June 8th, 2021," the petitioner asked the court to return his passport. Triggs, Case No. 17-cr-96, Dkt. No. 491 at 1. The following day, the court ordered the Clerk of court to release the petitioner's passport. Dkt. No. 492.

7

## II. Analysis

### A. Standard

In a §2255 proceeding, the court first must review—or "screen"—the motion. Rule 4 of the Rules Governing Section 2255 Proceedings provides that

> [i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

A petitioner seeking relief under §2255 must allege either that his sentence violated the Constitution or laws of the United States, that the court was without jurisdiction, that the sentence exceeded the maximum authorized by law or that the sentence is otherwise subject to collateral attack. 28 U.S.C. §2255(a). At the screening stage, the court considers whether the petitioner has raised claims that can be adjudicated in a §2255 proceeding, whether the petitioner has exhausted his claims and whether he filed the motion within the limitations period.

### B. Ineffective Assistance of Counsel

#### 1. *Procedural default*

The petitioner did not file a notice of appeal in his underlying criminal case. See Triggs, Case No. 17-cr-96. Normally, the failure to raise a claim on direct appeal prohibits the court from considering that claim in a §2255 motion. Delatorre v. United States, 847 F.3d 837, 843 (7th Cir. 2017) ("[a]ny claim that could have been raised originally in the trial court and then on

8

direct appeal that is raised for the first time on collateral review is procedurally defaulted."). There is an exception, however, for claims of ineffective assistance of counsel, which may be brought for the first time in a §2255 motion. Massaro v. United States, 538 U.S. 500, 504 (2003); United States v. James, 635 F.3d 909, 916 (7th Cir. 2011).

The petitioner's motion raises ineffective assistance of counsel claims, which are cognizable for §2255 relief and not subject to the exhaustion requirement. The petition also appears timely. Generally, the Antiterrorism and Effective Death Penalty Act of 1996 imposes a requirement that a petitioner file a motion for collateral review within one year of his conviction becoming "final." 28 U.S.C. §2255(f)(1). The court entered judgment on May 29, 2019; the petitioner filed this motion on May 22, 2020.

Although the petitioner filed his petition in May of 2020, the court was far from prompt in screening it. As a result, the petitioner now has been released from custody and is on supervision. But the Seventh Circuit has held that the fact that a petitioner is no longer in custody does not preclude review of a §2255 petition as long as the petitioner was in custody when he filed the motion. Torzala v. United States, 545 F.3d 517, 521 (7th Cir. 2008) (citing Spencer v. Kemna, 523 U.S. 1, 7 (1998); Virsnieks v. Smith, 521 F.3d 707, 717-18 (7th Cir. 2008)). This is particularly true if a petitioner, despite his release, continues to suffer adverse consequences of his conviction, such as being subject to supervision and being prohibited from possessing firearms. Id. While the petitioner may have served his sentence, the court is unable to say

with certainty that he does not suffer any adverse consequences of his conviction.

	2.	*Applicable law*

"Under *Strickland v. Washington*'s familiar, two-pronged test for ineffective assistance of counsel, [the petitioner] must demonstrate that (1) his counsel's performance was deficient; and (2) that deficiency resulted in prejudice." United States v. Berg, 714 F.3d 490, 496-97 (7th Cir. 2013) (citing Strickland, 466 U.S. at 687). The first prong of the Strickland test requires a petitioner to identify specific acts or omissions of his counsel; the court then considers whether, in light of all of the circumstances, his attorney's performance fell outside the range of "professionally competent assistance." Wyatt v. United States, 574 F.3d 455, 458 (7th Cir. 2009) (citing Coleman v. United States, 318 F.3d 754, 758 (7th Cir. 2003)). The court's review of an attorney's performance must be "highly deferential," and the court applies a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; Wyatt, 574 F.3d at 458. The prejudice prong requires a petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome." Adams v. Bertrand, 452 F.3d 428, 435 (7th Cir. 2006) (citing Strickland, 466 U.S. at 694).

In the context of a guilty plea, the prejudice prong requires a petitioner to show a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." United States v. Smith, 989 F.3d 575, 581 (7th Cir. 2021) (quoting Lee v. United States, __ U.S. __, 137 S. Ct. 1958, 1965 (2017)). "Courts must 'not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.'" Id. (quoting Lee, 137 S. Ct. at 1967). "We instead 'look to contemporaneous evidence to substantiate a defendant's expressed preferences' and allow a withdrawal if we are convinced that the defendant would have pleaded differently." Id. (quoting Lee, 137 S. Ct. at 1967).

3.   *Petitioner's ineffective assistance of counsel claims*

The petitioner states that his attorney "failed to investigate the charge that [he] pled guilty to." Triggs, Case No. 20-cv-781, Dkt. No. 1 at 4. He asserts that he "was in county jail when the charge that [he] pled guilty to occurred, so there's no way possible that [he] could have made the call that was the basis for the charge in the indictment." Id. In Ground Two, the petitioner alleges that Attorney Bailey's ineffective assistance "led to Due Process violation because the elements of the offense aren't present." Id. at 5.

The petitioner's claims lack merit. Representations made to a court during a plea colloquy are presumptively true. Hurlow v. United States, 726 F.3d 958, 968 (7th Cir. 2013) (quoting United States v. Chavers, 515 F.3d 722, 724 (7th Cir. 2008)). By signing the plea agreement, the petitioner represented

11

that he acknowledged, understood and agreed that he was guilty of the offense in the count in the information, and that facts attached to the plea agreement established his guilt beyond a reasonable doubt and were true and correct. Under those facts, the petitioner "admit[ted] that on or about June 30, 2016, he used the telephone to facilitate his marijuana trafficking." Triggs, Case No. 17-cr-96 (E.D. Wis.), Dkt. No. 240 at 15. The plea agreement and the plea hearing reflect that the petitioner entered into the plea agreement knowingly, voluntarily and intelligently.

     The petitioner's plea was not the result of a rushed process. At a status conference on April 27, 2018, the prosecutor reported that she had been discussing resolution with the various defendants and that none had indicated a desire to go to trial. Dkt. No. 190 at 1. At a hearing in June 2018, the prosecutor reported that she had tendered plea agreements to the defendants (one of whom was the petitioner), but that so far, none had been executed. Dkt. No. 198 at 1. The petitioner signed his plea agreement on December 13, 2018—almost eight months after the prosecutor indicated she'd begun negotiations and six months after she reported that she had tendered plea agreements to the defendants. If the petitioner believed that he could not have made the telephone call that was the subject of the information, he had plenty of time to advise Attorney Bailey of that fact. There is no evidence in the record to

12

Case 2:20-cv-00781-PP   Filed 08/31/21   Page 12 of 14   Document 7

support a claim that Attorney Bailey failed to investigate the charge to which the petitioner pled guilty.[1]

The undersigned presided over both the plea hearing and the sentencing hearing. There was no indication at either hearing that the petitioner did not enter into the plea agreement voluntarily, knowingly and intelligently. In fact, Attorney Bailey filed three letters of support on the petitioner's behalf prior to the sentencing hearing. Dkt. Nos. 340, 341. The day after the sentencing hearing, Attorney Bailey filed a letter with the court, indicating that he had consulted with the petitioner and that the petitioner had indicated to Attorney Bailey that he did not wish to appeal. Dkt. No. 346. Against this background, the petitioner's unsupported assertions made a year after the sentencing hearing are insufficient for the court to conclude that Attorney Bailey provided ineffective assistance of counsel or that the petitioner did not enter his plea voluntarily.

The court will deny the motion.

---

[1] The court also notes that the presentence report indicates that four cooperating sources and four cooperating defendants provided information that the petitioner was a heroin, cocaine and marijuana dealer, and three cooperating defendants provided information that the petitioner possessed firearms. Dkt. No. 334 at ¶¶55-58. Had he been convicted of the conspiracy charge, the petitioner would have faced significantly more prison time—a ten-year mandatory minimum sentence. Attorney Bailey successfully negotiated for a much lesser charge—commonly known as a "phone count"—and at sentencing, argued that his client should receive only probation.

### III. Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2255 Cases, the court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Peterson v. Douma, 751 F.3d 524, 528 (7th Cir. 2014) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). The court declines to issue a certificate of appealability, because no reasonable jurist could debate that the petitioner's claims do not warrant relief under 28 U.S.C. §2255.

### IV. Conclusion

The court **DENIES** the petitioner's motion to vacate, set aside or correct sentence under 28 U.S.C. §2255. Dkt. No. 1.

The court **DECLINES TO ISSUE** a certificate of appealability.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 31st day of August, 2021.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**